IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SHAFFIE MOHAMMED,

               Plaintiff,

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

CIVIL ACTION FILE NO.

1:10-CV-1518-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied his applications for a period of disability, disability insurance benefits, and supplemental security income. For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **REVERSED** and that the case be **REMANDED** for further proceedings.

## I.    Procedural History

Plaintiff Shaffie Mohammed filed applications for a period of disability, disability insurance benefits, and supplemental security income on July 18, 2006,

alleging a disability onset date of May 1, 2004. [Record ("R.") at 25, 106-17]. After his applications were denied initially and on reconsideration, an administrative hearing was held on June 11, 2008. [R. at 62-82]. The Administrative Law Judge ("ALJ") issued a decision on June 26, 2008, denying the claimant's applications. [R. at 22-35]. After the Appeals Council denied a request for review, the claimant filed a complaint in this court on May 21, 2010, seeking judicial review of the final decision. [R. at 1-6; Doc. 3]. The parties have consented to proceed before the undersigned Magistrate Judge.

## II.    Statement of Facts

The ALJ found that Plaintiff Shaffie Mohammed has the following severe impairments: status post kyphoplasty vertebral fractures and lumbar/thoracic compression fracture. [R. at 27]. Although these impairments are "severe" within the meaning of the Social Security Regulations, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 28]. The ALJ found that Plaintiff had the residual functional capacity to "perform the full range of medium work." [R. at 28]. The ALJ concluded that Plaintiff is capable of performing his past relevant work as a chief building engineer. [R. at 34].

2

Accordingly, the ALJ found that Plaintiff was not under a disability at any time from his alleged onset date of May 1, 2004, through the date of the ALJ's decision.  [R. at 35].

The ALJ's decision [R. at 25-35] states the relevant facts of this case as modified herein as follows:

The claimant was 53 years old as of his alleged onset date.  He has a college education and past relevant work experience as a chief building engineer.  In his disability report, the claimant said that he was limited in his ability to work due to depression and an injured back, pelvis, left elbow, and right ankle.  He said that he stopped working on December 31, 2001.  (Exhibit 2E).  Records show that the claimant was seen at Martin Memorial Medical Group for general health care.  On May 10, 2002, he reported that he had lost his job, did not have any insurance, and was self-employed.  He was not very compliant about his follow-up.  The claimant continued to drink daily and denied any depression.  He seemed to be in remission with Zoloft.  His blood pressure was acceptable according to Dr. Robert Chua.  (Exhibit 4F, pages 8-9).  The claimant was hospitalized on April 25, 2004, after falling off of a roof while inebriated.  He was discharged on May 1, 2004, with diagnoses of comminuted fracture olecranon process of the left elbow, left pelvic fracture, status post fall, alcohol

3

dependence, and hypertension.  He was deemed orthopedically stable with visiting nursing home health services.  (Exhibit 1F).

On June 29, 2004, the claimant saw Dr. Mark Powers in follow-up and was noted to have a healed olecranon process fracture.  He had a healed acetabular fracture and was ambulating independently.  (Exhibit 1F, page 1).  Dr. Chua saw the claimant on July 19, 2004, and noted that his disposition was "definitely much better."  His major depression was much improved on two medications, and he had minimal left shoulder impingement.  The claimant had gradually mobilized himself to the point where he was actually pain-free and had only a slight limp.  He was back working except with no climbing, and he had no side effects on Zoloft and Wellbutrin.  It was noted that he did maintenance type jobs and was sober since his accident.  The doctor stated that the claimant was ambulatory and had good weight bearing on the left side. (Exhibit 4F, pages 4-5).

On May 12, 2005, the claimant underwent open reduction internal fixation of a right ankle fracture, performed by John S. Hruska, M.D.  (Exhibit 3F, page 16).  On May 19, 2005, Dr. Hruska performed a kyphoplasty Ll and L2 for fracture of Ll and L2.  (Exhibits 2F and 3F, page 12).  A right lower extremity ultrasound dated July 1, 2005, was negative.  (Exhibit 4F, page 26).

4

Records from Coastal Orthopaedic & Sports Medicine Center on July 12, 2005, indicate that the claimant was seen for follow-up for his lumbar spine.  A CAT scan was unremarkable for acute process, and the doctor stated that the claimant's flank pain was just mechanical in nature from his back and would be treated with muscle relaxants and a heating pad.  (Exhibit 21F, page 1).

Dr. Chua saw the claimant on October 27, 2006, and stated that he was involved in a motor vehicle accident where he was so intoxicated that he hit a fence and fractured the T12 vertebral body.  It was also noted that he had some problems with depression and alcohol use in the past and that compliance was a major issue.  His motor strength of the arms and legs was grossly normal.  (Exhibit 23F, page 10).

On November 10, 2006, the claimant underwent a psychological assessment with Michael C. Riordan, Psy.D.  The claimant reported that his household duties included "just about everything" but that he was unable to perform heavy lifting, bending, and sitting/standing for extended periods.  His attention was average and concentration appeared fair.  His insight was fair and judgment appeared average. Socialization also appeared average.  Diagnostic impressions were of depressive disorder NOS and chronic pain.  (Exhibit 5F).

5

J.R. Cardiff, M.D., examined the claimant on November 17, 2006, upon referral of the Office of Disability Determinations.  The claimant reported having had a car accident on October 10, 2006, in which he had been drinking in addition to using narcotic pain medication.  He was taken to jail and remained there for several days. He was then taken to the ER and was found to have a fractured T12 vertebrae.  The claimant said that since the accident he stopped using ETOH and stopped working as a handyman in 2004 due to an inability to bend and climb.  Physical examination indicated that his gait was abnormal, wide based and slightly unsteady though no assistive devices were used.  His grip was 4/5 on the right and 5/5 on the left.  Motor strength in the right arm was 3/5 for lower arm flexion and extension and 3/5 for upper.  The left arm was 4/5 for lower and upper arm flexion and extension.  Right leg flexion and extension was 3/5; and the left leg was 4/5.  He had limitations in range of motion.  Dr. Cardiff indicated that the claimant was unable to sit, stand, or walk for more than a few minutes without having to change positions or rest and that he could not lift or handle objects well due to his arm weakness.  He also had decreased fine motor function due to lateral right hand numbness and tremor.  He was able to hear conversation and speak and travel a little.  (Exhibit 6F).

6

Dr. John Afshar examined the claimant on December 5, 2006, upon request of Dr. Chua for thoracic and lumbar pain related to his October 16, 2006, car accident. The claimant stated that he had no symptoms prior to the accident regarding his head, neck, thoracic or lumbar spine.  (Exhibit 13F, page 5).  The claimant denied alcohol or substance abuse and stated that he stopped drinking alcohol since the accident. Impression was of post traumatic thoracic and lumbar pain secondary to T12 and L3 acute superior end plate compression fractures, progressively worsening, and neck pain and right upper extremity pain and paresthesias, with weakness, post traumatic in nature.  (Exhibit 13F, pages 5-7).

On December 15, 2006, the claimant underwent T11 and T12 kyphoplasty with reduction of fracture with internal stabilization, performed by Dr. Afshar.  (Exhibits 9F and 13F, page 9).  At a follow-up with Dr. Afshar on January 31, 2007, the claimant complained of thoracic and lumbar pain.  However, neurological examination showed sensory was intact to light touch and motor strength was 5/5.  X-rays of the lumbar spine on January 2, 2007, demonstrated no evidence of any further collapse or new fractures.  Bone density was consistent with osteopenia in the left femoral neck. (Exhibit 13F, pages 3-4).  On February 14, 2007, Dr. Chua stated that the claimant would start Fosamax.  (Exhibit 23F, page 6).  On May 23, 2007, Dr. Chua saw the

AO 72A

(Rev.8/82)

claimant and noted that the claimant's two grandsons were with him and that he and his wife were "really taking care of them for the most part." The claimant was compliant with his medication and did not have any major side effects. He was ambulatory with main complaint of erectile dysfunction. (Exhibit 23F, page 4).

On July 11, 2007, the claimant was examined by Steven Edney, Psy.D., upon referral of the Division of Disability Determinations. The claimant reported working as a handyman off and on since 2001 or 2002, as well as doing art and craft work. He also reported having had a DUI in 2006 and that he stopped drinking after that. The claimant stated that he was depressed since losing his car and home and not being able to work. His attention and concentration were fair, orientation was grossly intact, immediate memory was inconsistent and fair, and reasoning and judgment were fair. Diagnostic impression was an adjustment disorder with depression, chronic, and a GAF of 50. Dr. Edney stated that the claimant's priority need appeared to be medical treatment of the underlying causes of his chronic pain. According to Dr. Edney, the claimant then might be able to return to work which would likely go a long way toward alleviating his depression. The claimant denied current alcohol dependence. (Exhibit 16F).

AO 72A
(Rev.8/82)

Kathleen Jeannot, M.D., examined the claimant on July 21, 2007, and diagnosed back pain, degenerative in nature, due to previous C11 and C12 compression fractures in 2006, and lumbar L1-S2 compression fracture in 2005, repaired with kyphoplasty. The claimant said that he got moderate relief of his back pain with pain medication and alleged that he must use a back brace because without it he would collapse. He also said that he stopped working after his accident in 2004 and that he spent the day watching television. He said that he did not walk or do any yard work or housework due to back pain. The doctor indicated that the claimant came into the office using a back brace but his exam was inconsistent. The doctor stated that the claimant could be expected to stand and walk for about six hours in an eight hour workday and that he could be expected to sit for six hours in an eight hour work day. The claimant walked from the waiting room to the exam room using a normal gait and was able to get on and off the exam table without any assistance or difficulty. He was also observed freely moving his arms during the intake by the medical assistant. The claimant seemed to have waist pain with the slightest movement. There was no joint tenderness, crepitus, effusion, deformity, or trigger points. Grip strength was 30 pounds bilaterally, and motor strength was 2/5 in the upper extremities and 3/5 in the lower extremities. He exhibited extremely poor effort during this portion of the

9

evaluation.  The claimant remained standing throughout the evaluation and was not wearing a back brace.  Dr. Jeannot stated that the back brace was not medically necessary.   There were no manipulative limitations and no relevant visual, communicative or workplace environmental limitations.  (Exhibit 17F).

On October 8, 2007, the claimant visited Dr. Chua to get a refill of his medication and reported that he was moving to Georgia in three weeks.  Assessment indicated that he was stable from a medical standpoint but obviously had some functional deficits because of pain in the back, hip, and pelvic area.  His current medications included Vicodin, Fosamax, Verapamil, Citalopram, and Wellbutrin. (Exhibit 23F, page 2).

At the hearing, the claimant testified that he lived with his wife and son in a home owned by his son.  He stated that his home was foreclosed on about four years ago because he was not working and was unable to pay the mortgage.  He said that he last worked in May of 2004 and had no earnings for 2002, 2003, and 2004.  The claimant stated that he has not looked for work.  He and his wife, who is disabled, moved in with their daughter and then with their son.  He testified that he has pain in his lower back, right leg, and ankle.  On a scale from one to ten, with ten being the most severe, the pain in his back is an eight and in both of his legs it is a seven.  The

10

claimant takes medication for pain and depression.  He stated that he can sit for about 15 to 20 minutes and stand for 15 minutes but that he is most comfortable lying down with his feet elevated.  He can walk for about 200 to 300 feet and then must rest.  He related that he used a cane for about one year and wore a back brace daily for three years.  The claimant stated that the heaviest weight he can lift is a half gallon of milk. The chores are done by his wife and children.

Regarding activities of daily living, the claimant testified that he sits in a chair and watches television.  His wife helps him get dressed as he cannot raise his arm to put on his shirt.  He reads and watches television and naps for about a half hour to one hour during the day.  The claimant stated that he could not do a job such as a toll collector because he could not just sit.  The claimant responded to various questions during the hearing and said that he was hurt in 2004 and has had problems since that time with walking, lifting, carrying, and bending.

In a written report on August 31, 2006, the claimant said that during the day, he showered, dressed, exercised a little, read, watched the news on television, watched his grandchildren with his wife, ate dinner, and watched the news at 10:00 p.m.  He also said that he drove a car and shopped for groceries.  He spoke on the telephone with others and got along well with authority figures.  (Exhibit 3E).

11

Glenn Bigsby, D.O., a State agency medical consultant, reviewed the evidence of record on August 3, 2007.  He found that the claimant could lift 50 pounds occasionally and 25 pounds frequently, stand and walk for six hours, and sit for six hours in an eight hour workday.  He found that the claimant could frequently perform all postural activities except that he could stoop and crouch only occasionally.  He also found that the claimant had no manipulative, visual, communicative, or environmental limitations.  (Exhibit 20F).

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.   Standard of Review

An individual is considered to be disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work but cannot, considering

12

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id. at 1440.  "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving his disability.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  At step

one, the claimant must prove that he is not engaged in substantial gainful activity.  See id.  The claimant must establish at step two that he is suffering from a severe impairment or combination of impairments.  See id.  At step three, the Commissioner will determine if the claimant has shown that his impairments meet the Listing of Impairments found in Appendix 1.  If the claimant is able to make this showing, he will be considered disabled without consideration of age, education, and work experience.  See id.  "If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work."  Doughty, 245 F.3d at 1278.  "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work."  Id.  If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. §§ 404.1520(a), 416.920(a).

## IV.   Findings of the ALJ

The ALJ made the following findings of fact:

1.   The claimant met the insured status requirements of the Social Security Act through December 31, 2006.

14

2.      The claimant has not engaged in substantial gainful activity since May 1, 2004, the alleged onset date (20 C.F.R. §§ 404.1520(b), 404.1571, et seq., 416.920(b) and 416.971, et seq.).

3.      The claimant has the following severe impairments: status post kyphoplasty vertebral fractures and lumbar/thoracic compression fracture (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      The claimant has the residual functional capacity to perform the full range of medium work.

6.      The claimant is capable of performing past relevant work as a chief building engineer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).

7.      The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2004, through the date of the ALJ's decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

[R. at 27-35].

**V.     Discussion**

In the present case, the ALJ found at the first step of the sequential evaluation that Plaintiff Shaffie Mohammed has not engaged in substantial gainful activity since May 1, 2004, the alleged onset date.   [R. at 27].   At the second step, the ALJ

15

determined that Plaintiff has status post kyphoplasty vertebral fractures and lumbar/thoracic compression fracture. [Id.]. Although these impairments are "severe" within the meaning of the Social Security Regulations, the ALJ found at the third step that they did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 28]. The ALJ found at the fourth step of the sequential evaluation that Plaintiff is capable of performing his past relevant work as a chief building engineer. [R. at 34]. Therefore, Plaintiff was not under a disability from the alleged onset date through the date of the ALJ's decision. [R. at 35].

Plaintiff Mohammed argues that the ALJ's decision was not supported by substantial evidence because he failed to evaluate or weigh the opinions of a number of physicians, including those who found that Plaintiff's depression was a severe mental impairment. [Doc. 11 at 14-19]. Plaintiff also contends that the ALJ erred in assessing Plaintiff's residual functional capacity ("RFC"). According to Plaintiff, the ALJ failed to make a function-by-function assessment of the Plaintiff's physical limitations before finding that he could perform the full range of medium work. [Doc. 11 at 19-21]. In addition, Plaintiff argues that the ALJ failed to evaluate all of the record evidence in determining Plaintiff's RFC. The court agrees with many of

16

Plaintiff's arguments and concludes that the ALJ's decision was not supported by substantial evidence.

The Eleventh Circuit has held that the ALJ is "required to state with particularity the weight he gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (citing MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986)).  In the present case, there are many medical opinions in the record that the ALJ either ignored or failed to state the weight he gave them.  The record includes the findings of psychologist Michael Riordan who conducted a psychological evaluation of Plaintiff in November 2006.  [R. at 292-95].  The ALJ discussed the evaluation in a general manner, but he did not address Dr. Riordan's finding that "due to his psychological and physical conditions, the client's ability to work full time on a competitive basis would likely be impaired." [R. at 294].  The ALJ also did not state the weight he gave to the psychologist's opinion.

The record also includes the findings of Dr. Eric Weiner and Dr. Pamela Green, both of whom are State agency psychological consultants.  Dr. Green and Dr. Weiner each completed a mental RFC assessment and a psychiatric review technique form ("PRTF").  [R. at 302-19, 366-83].  Dr. Weiner's mental RFC indicated that Plaintiff was moderately limited in his ability to maintain attention and concentration for

17

extended periods and to interact appropriately with the general public.  [R. at 380-83].

In his PRTF, Dr. Weiner found that Plaintiff suffered from an adjustment disorder and

a depressive disorder, NOS, and had moderate difficulties in maintaining social

functioning and concentration, persistence, or pace.  [R. at 366-79].

Dr. Green's mental RFC indicated that Plaintiff was moderately limited in his

ability: to understand and remember detailed instructions; to carry out detailed

instructions; to maintain attention and concentration for extended periods; to complete

a normal workday and workweek without interruptions from psychologically based

symptoms and to perform at a consistent pace without an unreasonable number and

length of rest periods; to respond appropriately to changes in the work setting; and to

set realistic goals or make plans independently of others.  [R. at 302-03].  Dr. Green's

PRTF indicated that Plaintiff suffered from a depressive disorder, NOS, and had

moderate restrictions of his daily living activities and moderate difficulties in

maintaining concentration, persistence, or pace.  [R. at 306-19].  Another State agency

psychological consultant, Dr. Salley Jessee, completed a review of Dr. Green's opinion

and agreed with the PRTF limitations found therein.  [R. at 330].

The Commissioner argues that the ALJ's decision was supported by substantial

evidence.  With regard to the opinion of Dr. Riordan, the Commissioner contends that

18

the ALJ was not required to offer any further discussion of this psychologist's opinion because the statements made by Dr. Riordan in his evaluation of Plaintiff were vague. [Doc. 12 at 10-11].  According to the Commissioner, "Dr. Riordan gave only vague opinions regarding the possible effects of Plaintiff's alleged depression. . . ." [Doc. 12 at 10].  The Commissioner points out that Dr. Riordan merely stated, "It is likely that the client's ability to understand, carry out and remember instructions is somewhat impaired."  [R. at 294].  The Commissioner also notes that Dr. Riordan "did not separate Plaintiff's mental condition from his alleged physical problems" but opined that Plaintiff's ability to work likely would be impaired by "his psychological and physical conditions."  [Doc. 12 at 10; R. at 294].

    With regard to the opinions of the State agency psychological consultants, the Commissioner recognizes that these medical sources "concluded Plaintiff had a severe mental impairment."  [Doc. 12 at 14].  However, according to the Commissioner, the record does not support their opinions and substantial evidence supports the ALJ's finding that Plaintiff did not have a severe mental impairment.  [Id.].  The Commissioner acknowledges that "the ALJ did not specifically discuss the opinions of the State agency psychological consultants," but according to the Commissioner, this amounted to harmless error because the ALJ implicitly rejected their opinions.

19

[Doc. 12 at 15].  In addition, the Commissioner argues that Plaintiff failed to show that he was prejudiced by the ALJ's failure to discuss the consultants' opinions.  [Id.].  The court finds these arguments unpersuasive.

The Commissioner contends that the ALJ was not required to state the weight that he gave to the opinion of Dr. Riordan because it was vague.  This argument, however, ignores the clear requirement that the ALJ is "required to state with particularity the weight he gave the different medical opinions and the reasons therefor."  Sharfarz, 825 F.2d at 279.  Without an explanation from the ALJ, the court is unable to determine if the ALJ intended to give little weight to Dr. Riordan's opinion or if the ALJ inadvertently overlooked key aspects of it.  Given the fact that the ALJ did not mention Dr. Riordan's opinion that Plaintiff's "ability to work full time on a competitive basis would likely be impaired," it seems reasonable to conclude that the ALJ was unaware of it.  [R. at 294].  Even assuming *arguendo* that the ALJ did, in fact, intend to give little weight to Dr. Riordan's opinion, the court still has no way of evaluating whether the ALJ's decision on this issue was based upon proper legal standards.  The Commissioner contends that Dr. Riordan's opinion was vague, but the ALJ did not state that he rejected this opinion due to vagueness or any other reason.  And the court will not affirm the ALJ's decision "simply because some rationale might

20

have supported the ALJ's conclusion." <u>Owens v. Heckler</u>, 748 F.2d 1511, 1516 (11th Cir. 1984).

As discussed *supra*, State agency psychologists Weiner, Green, and Jessee found that due to depression, Plaintiff had a number of moderate difficulties and limitations in areas such as maintaining concentration, persistence, or pace. [R. at 316, 330, 376]. Social Security Ruling 96-6p emphasizes that "State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs . . . ." SSR 96-6p. The ruling also states that ALJs "are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." <u>Id.</u> Here, the ALJ not only failed to state the weight he gave to the opinions of the three State agency psychological consultants, he did not even mention them in his decision. By ignoring these opinions, the ALJ did not comply with SSR 96-6p.

The ALJ did not find that Plaintiff's depressive disorder was a severe impairment. The only impairments found by the ALJ to be severe were status post kyphoplasty vertebral fractures and lumbar/thoracic compression fracture. [R. at 27]. A severe impairment is one that "causes more than a minimal limitation on a

21

claimant's ability to function." Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Given the fact that the State agency psychologists concluded that Plaintiff's depressive disorder was a severe impairment, the court finds that the ALJ's failure to address these opinions was not mere harmless error as argued by the Commissioner. Accordingly, the ALJ's decision must be reversed and the case remanded for further proceedings.

Plaintiff next argues that the ALJ erred by failing to make a function-by-function assessment of the Plaintiff's physical limitations before finding that he could perform the full range of medium work. [Doc. 11 at 19-21]. Social Security Ruling 96-8p provides, "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of work. . . ." The function-by-function assessment evaluates the claimant's "remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing and pulling." SSR 96-8p. The ruling states that the ALJ must consider each strength demand separately and provides an example: "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours." SSR 96-8p.

22

The ALJ in the present case found that Plaintiff could perform medium work, which involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." SSR 83-10. "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." Id. Although the ALJ could have been more clear in his findings, the court finds that he adequately performed a function-by-function assessment. The ALJ cited to the opinion of Glenn Bigsby, a State agency medical consultant, who found that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, stand and walk for six hours, and sit for six hours in an eight hour workday. [R. at 34, 384-91]. The ALJ stated that he gave great weight to this opinion. The ALJ also stated that he found that Plaintiff "can frequently perform all postural activities, including stooping and crouching." [R. at 34]. In light of these findings, the court concludes that the ALJ acted in accordance with SSR 96-8p by finding that Plaintiff could perform specific work-related functions at the medium exertional level. See Freeman v. Barnhart, 220 Fed. Appx. 957, 960 (11th Cir. 2007).

Although the ALJ adequately complied with SSR 96-8p, the court nevertheless finds that the ALJ committed error in assessing Plaintiff's RFC. "[T]he ALJ must

23

determine the claimant's RFC using all relevant medical and other evidence in the case." Phillips, 357 F.3d at 1238-39.  There is no indication that the ALJ, when determining Plaintiff's physical abilities, considered the lifting and carrying limitations found by consultant Dr. Kathleen Jeannot, who examined Plaintiff in July 2007. [R. at 361-65].  Dr. Jeannot found that Plaintiff could not lift and carry more than ten pounds on both a frequent and occasional basis.  [R. at 361-65].  These findings contradict the ALJ's determination that Plaintiff is capable of performing the full range of medium work.  Dr. Jeannot also found that Plaintiff was unable to bend, stoop, or crouch due to back pain.  [R. at 365].  This finding is also contrary to the ALJ's RFC determination because "[t]he considerable lifting required for the full range of medium work usually requires frequent bending-stooping."  SSR 83-10.

The ALJ discussed some aspects of Dr. Jeannot's report which supported his RFC assessment, such as her opinion that Plaintiff "could be expected to stand and walk for about six hours in an eight hour workday and that he could be expected to sit for six hours in an eight hour work day." [R. at 31].  However, the ALJ did not address Dr. Jeannot's findings regarding Plaintiff's limitations in the areas of lifting, carrying, bending, or stooping.  [R. at 31-32].  As Plaintiff correctly notes, "Because the ALJ failed to evaluate that opinion, or to make any specific finding regarding each of the

abilities Dr. Jeannot found limited, it is impossible to know whether he overlooked the opinion or rejected it."  [Doc. 13 at 4].  Even assuming that the ALJ rejected Dr. Jeannot's opinion, the court is unable to evaluate whether this rejection was based on proper legal standards because the ALJ offered no reasons why her opinion should not be credited.  [R. at 31-32].  Upon remand, if the ALJ decides to credit non-examining consultants such as Dr. Bigsby and reject examining consultants such as Dr. Jeannot, then he should offer specific reasons for doing so.  See Spencer on behalf of Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985) (holding that to "attempt to evaluate disability without personal examination of the individual and without evaluation of the disability as it relates to the particular person is medical sophistry at its best") (citations omitted).

## VI.    Conclusion

For the foregoing reasons, the court finds that the decision of the ALJ was not supported by substantial evidence and was the result of a failure to apply the proper legal standards.  It is, therefore, **ORDERED** that the Commissioner's decision be **REVERSED** and that this action be **REMANDED** pursuant to 12 U.S.C. § 405(g) Sentence Four for further proceedings in accordance with the above discussion.  The Clerk is **DIRECTED** to enter judgment in favor of the Plaintiff.

25

AO 72A

(Rev.8/82)

**IT IS FURTHER ORDERED** that, in the event past due benefits are awarded to Plaintiff upon remand, Plaintiff's attorney may file a motion for approval of attorney's fees under 42 U.S.C. §§ 406(b) and 1383(d)(2) no later than thirty days after the date of the Social Security letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past-due benefit calculation stating the amount withheld for attorney's fees. Defendant's response, if any, shall be filed no later than thirty days after Plaintiff's attorney serves the motion on Defendant. Plaintiff shall file any reply within ten days of service of Defendant's response.

**SO ORDERED**, this 1st day of July, 2011.


JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)